```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| CHRIS JUDAY, et al. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| MERCK & CO., INC., et al. | : | NO. 16-1547 |

MEMORANDUM

Bartle, J.                                               April 13, 2017

Plaintiffs Chris Juday and his wife Pat Juday, citizens of Indiana, bring this diversity action against defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively "Merck"), both of which are incorporated and have their principal places of business in New Jersey. Mr. Juday alleges personal injuries and his wife alleges loss of consortium as a result of the administration to Mr. Juday of Zostavax, Merck's live vaccine designed to prevent shingles.[1]

Merck has now moved for summary judgment on the ground that plaintiffs' claims are barred by the applicable two-year statutes of limitations. Summary judgment may be granted under Rule 56 of the Federal Rules of Civil Procedure only if there are no genuine disputes of material fact and Merck is entitled to judgment as a matter of law.

---

1. Plaintiffs also sued Ann Redfield, MSN, RN, a citizen of Pennsylvania. All claims against her have been dismissed.

The following facts are undisputed or taken in the light most favorable to the non-movants. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Mr. Juday received the Zostavax vaccine on March 2, 2014 at a pharmacy in Indiana. The vaccine had been prescribed a week or so before by his primary care physician, Dr. Jon Van Scyoc. By March 10, he began to experience fever with a temperature of $101°^F$, a rash on his abdomen and back, and what looked like chickenpox. On March 12, he and his wife went to Prairie Lakes Family Medicine in Indiana where they saw a nurse practitioner, Andrea Compton. His medical record of that visit, which contained information supplied by the Judays, stated:

> had Zostavax 8 days ago initially fine but
> developed diffuse raised rash first on right
> side of trunk but now spread across back
> accompanied by low grade fever

Ms. Juday has a bachelor's degree in nursing and three classes short of her Master's degree. She discussed with Ms. Compton the possibility that the Zostavax vaccine could be the cause of her husband's symptoms. Ms. Compton was not sure what illness Mr. Juday had or what was its cause.

Mr. Juday advised his employer on March 13 that he would not be at work because of illness. According to the disability claim form in his employee file, Mr. Juday reported "Severe Allergic Reaction to Shingles." Mr. Juday later clarified at his deposition that "Shingles" referred to "shingles vaccination."

While he does not remember saying the exact words recorded on his disability form, he does remember telling his employer "I had a shingles vaccination and I was sick."

Mr. Juday returned to Prairie Lakes Family Medicine on March 24 due to his persistent symptoms and again saw Ms. Compton. The "History of Present Illness" section of the medical records for that visit contains the following:

> here for follow up of reaction after
> Zostavax. . . . Rash from shingles vaccine
> improving but still with persistent cough,
> intermittent fever

There is evidence that Ms. Compton or her assistant contacted Merck, the manufacturer of Zostavax, at some point in mid-March 2014 concerning Mr. Juday's illness. According to Ms. Juday, Ms. Compton told her during the March 24 visit to Prairie Lakes Family Medicine that Merck had no recorded cases of chickenpox from the vaccine. Ms. Juday testified that after learning what Merck had said, she and Ms. Compton discussed that the vaccine "was maybe one of the possibilities, but we didn't really know for sure what it was." At no time did Ms. Compton reach a conclusion as to the cause of Mr. Juday's illness or express any opinion to Mr. Juday or his wife on this subject.

During this period, Ms. Juday, herself a nurse, had not remained idle. Between one and three weeks after her husband began to suffer an illness, she printed information from the

website of Merck and the Center for Disease Control to learn "if there was any history of it somewhere that someone else had had a reaction that was similar to his to Zostavax, to see if there was, you know, any particular thing that they did for it." The information she obtained did not indicate to her any case like her husband's.

The plaintiffs again visited Prairie Lakes Family Medicine on April 1, 2014. This time Mr. Juday saw Dr. Van Scyoc. The "History of Present Illness" in the medical record for his visit noted:

> received Zostavax first week of March. Shortly afterward patient developed a vesicular rash over the trunk. Near the same timeframe he developed a dry cough and some fever which persists. He has had fever daily for about 3 weeks

After examining Mr. Juday, Dr. Van Scyoc concluded that Zostavax "could be a possibility contributing to [Mr. Juday's] symptoms." At his deposition, Dr. Van Scyoc testified that he told Mr. Juday of this possibility. Mr. Juday does not remember hearing any such statement. Ms. Juday does not think the doctor discussed the subject with her husband. She recalls that the doctor was "totally stymied." Dr. Van Scyoc, however, referred Mr. Juday to Dr. Ikerd, an infectious disease specialist. On April 9, 2014, Dr. Ikerd confirmed that the cause of Mr. Juday's symptoms was the Zostavax vaccine.

This lawsuit was filed on April 5, 2016, more than two years after March 2, 2014, the date when Mr. Juday received the Zostavax vaccine.

The plaintiffs are Indiana citizens who incurred their alleged injuries in Indiana. It is undisputed that their claims accrued there. Because this diversity action was filed in the Eastern District of Pennsylvania, we first look to the choice of law rules of the underlying forum, that is the Commonwealth of Pennsylvania, to tell us what statutes of limitations to apply. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941). Under Pennsylvania's Uniform Statute of Limitations on Foreign Claims Act, "The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. § 5521(b).

Plaintiffs' complaint contains claims for Negligence (Count I), Design Defect (Count II), Failure to Warn (Count III), Breach of Express Warranty (Count IV), Breach of Implied Warranty (Count V), Negligent Misrepresentation (Count VII), Unjust Enrichment (Count VIII), and Loss of Consortium (Count IX).[2] Since these claims all accrued in Indiana, we must ascertain for

---

2. Plaintiffs' claim for Fraudulent Misrepresentation (Count VI) has been dismissed.

each claim whether Pennsylvania or Indiana has the shorter limitations period.

Pennsylvania has enacted a two-year statute of limitations for personal injury claims grounded in negligence, design defect, failure to warn, negligent misrepresentation, and loss of consortium. See 42 Pa. Const. Stat. § 5524. Indiana also has enacted a two-year statute of limitations for personal injury claims. See Ind. Code § 34-11-2-4; Stickdorn v. Zook, 957 N.E.2d 1014, 1020 (Ind. Ct. App. 2011).

Pennsylvania provides for a four-year statute of limitations for breach of express and implied warranties. 13 Pa. Const. Stat. § 2725; 42 Pa. Const. Stat. § 5525. In contrast, Indiana applies a two-year statute of limitations for breach of warranty claims predicated on a products liability tort as alleged in the complaint. See Ind. Code § 34-20-3-1(b). Those claims are governed by the Indiana Products Liability Act which bars such claims more than two years old regardless of the legal theory on which they are based. See Ind. Code §§ 34-20-1-1, et seq.; Lyons v. Leatt Corp., 2015 WL 7016469 at *2-*3 (N.D. Ind. Nov. 10, 2015).

Plaintiffs also have a claim for unjust enrichment. They seek to recover from Merck for the cost Mr. Juday incurred for the vaccine because in their words Mr. Juday "did not in fact receive safe and effective treatment for the prevention of

shingles." Pennsylvania prescribes a four-year statute of limitations for such a claim. 42 Pa. Const. Stat. § 5525(4); Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997). In Indiana, the limitations period is six years under certain circumstances. Ind. Code § 34-11-2-7; see also City of East Chicago, Indiana v. East Chicago Second Century, Inc., 908 N.E.2d 611, 619 (Ind. 2009). However, under Indiana law, it is "the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of the statute of limitations." Shideler v. Dwyer, 417 N.E.2d 281, 285 (Ind. 1981). Where an unjust enrichment claim arises out of a tort-based products liability claim as occurred here, Indiana would apply a two-year limitations period. Ind. Code § 34-20-3-1; see Knutson v. UGS, 2007 WL 2122192 at *5 (S.D. Ind. July 19, 2007); see also Schwindt v. Hologic, Inc., 2011 WL 3806511 at *7 (S.D. Ind. Aug. 26, 2011).

Thus, the limitations periods for the negligence, design defect, failure to warn, negligent misrepresentation, and loss of consortium claims are the same in Indiana and Pennsylvania. For the breach of warranty and the unjust enrichment claims, Pennsylvania adopts the Indiana two-year statute of limitations since Indiana bars those claims first. In sum, all of plaintiffs' claims are subject to a two-year time-bar.

Plaintiffs acknowledge that the action was instituted more than two years after Mr. Juday received the Zostavax vaccine.

-7-

Instead, they assert that their lawsuit is timely because the discovery rule has tolled the various statutes of limitations for a sufficient period to allow the lawsuit to proceed.

Under Pennsylvania law, a claim for relief accrues when the right to sue arises, that is when the injury was inflicted. Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005). The Pennsylvania Supreme Court has written that "[m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." Id. Pennsylvania, however, has created a discovery rule which allows for the tolling of the limitations period where "the injury or its cause was neither known nor reasonably knowable." Id. at 858 (citing Lewey v. H.C. Frick Coke Co., 31 A. 261 (Pa. 1895)). It excludes "from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." Id.

The statute begins to run "when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984). The clock does not start to tick until the plaintiff knows of his injury or should have known about it

through the exercise of reasonable diligence.  The Pennsylvania Supreme Court has explained:

> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case.  Long ago we recognized that 'there are a few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.  This is what is meant by reasonable diligence.'

Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995) (citing Deemer v. Weaver, 187 A. 215, 217 (Pa. 1936)).  It is an objective standard.  The court concluded that "the plaintiff's actions must be evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests[.]'"  Id.  (citing Burnside v. Abbott Lab., 505 A.2d 973, 988 (Pa. Super. Ct. 1985)).

Whether the plaintiff has exercised reasonable diligence is generally a jury question.  However, it is a matter of law for this court to determine the start of the time period "where the facts are so clear that reasonable minds cannot differ."  Cochran, 666 A.2d at 248.

Our Court of Appeals in Debiec v. Cabot Corp., 352 F.3d 117, 132 (3d Cir. 2003) held that under Pennsylvania law a definitive diagnosis of a disease or injury is not required to

-9-

start the running of the statute of limitations: "unrebutted suspicion that a claimant has a particular disease, which is caused by another, is sufficient to start the clock." That suspicion can in some cases be rebutted if a physician tells plaintiff that he or she does not have a particular disease or injury. Id.

The Indiana Supreme Court adopted a discovery rule in Barnes v. A.H. Robins Co., Inc., 476 N.E.2d 84, 87-88 (Ind. 1985), a case similar to the one pending here:

> [T]he statute of limitations . . . commences to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another. It is contemplated that persons armed with these indices have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute.

That court in a later decision held that "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992).

In Evenson v. Osmose Wood Preserving Co., 899 F.2d 701, 705 (7th Cir. 1990), the Court of Appeals for the Seventh Circuit, applying Indiana law, explained:

> [A] person knows or should have discovered
> the cause of his injury when he has or
> should have discovered some evidence that
> there was a reasonable possibility that his
> injury was caused by the act or product of
> another. A reasonable possibility, while
> less than a probability, requires more than
> the mere suspicion possessed by . . . a
> layperson without technical or medical
> knowledge.

The Indiana Supreme Court has reiterated that a plaintiff's "mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute." Degussa Corp. v. Mullens, 744 N.E.2d 407, 411 (Ind. 2001). Furthermore, a physician's statement that there are a "range of potential causes" without more is not enough. Id. Nonetheless, "'events short of a doctor's diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's' product caused his or her injuries[.]" Id. (quoting Evenson, 899 F.2d at 705).

It appears that in Pennsylvania an "unrebutted suspicion," that is one not negated by a physician or otherwise, is sufficient to start the clock running. In Indiana, more seems to be required. A plaintiff, at a minimum, must have information that rises to the level of a "reasonable possibility," although a physician's statement to plaintiff about a mere possibility of causation does not rise to the level of a reasonable possibility. On the other hand neither state dictates that a physician advise a

-11-

patient of a causal connection between the act of a third party and an illness in order to trigger the statute of limitations. Both states place the burden of proof on the plaintiff to establish that he or she is entitled to have the limitations period tolled under the discovery rule. Cochran, 666 A.2d at 249; David v. Kleckner, 9 N.E.3d 147, 152 (Ind. 2014).

     As noted above, where the causes of action accrued outside the Commonwealth as happened here, Pennsylvania applies the statutes of limitations of the state which will bar them first. 42 Pa. Const. Stat. § 5521(b). For those claims where the limitations periods of Indiana and Pennsylvania are the same, we must determine how the discovery rule of each state affects the running of its applicable limitations periods. In Pennsylvania, the tolling under the discovery rule ends when the plaintiff, in the exercise of reasonable diligence, has an "unrebutted suspicion" that there is a connection between the injury and the symptoms. In Indiana, it ends when the plaintiff, in the exercise of ordinary diligence, has information that there is a reasonable possibility of that connection. Pennsylvania clearly imposes a less onerous standard to spark the running of the limitations period than does Indiana. That is, the Pennsylvania discovery rule makes it more difficult for a plaintiff to invoke or maintain tolling than does the Indiana discovery rule. Consequently, with respect to the claims of negligence, design defect, failure to

warn, negligent misrepresentation, and loss of consortium, we will apply the Pennsylvania statute of limitations with its narrower discovery rule since Pennsylvania will necessarily bar these claims first.

We now turn to the remaining claims. Indiana prescribes a two-year statute of limitations for Mr. Juday's claims for the breach of express and implied warranties and for unjust enrichment. These claims all sound in tort regardless of the legal theory asserted. Indiana applies its discovery rule to all such claims. See Wehling, 586 N.E.2d at 842. Pennsylvania on the other hand has a four-year statute of limitations for breach of express or implied warranties and does not allow for tolling for these claims. The statute runs without interruption after the breach occurs. 13 Pa. Con. Stat. § 2725; Speicher v. Dalkon Shield Claimants Trust, 943 F.Supp. 554, 558 (E.D. Pa. Nov. 6, 1996); Northampton Cty. Area Cmty. Coll. v. Dow Chem., U.S.A., 566 A.2d 591, 599 (Pa. Super. Ct. 1989). Pennsylvania, however, will permit a plaintiff to benefit from its discovery rule for a claim of unjust enrichment but the limitations period is four years. See Morgan v. Petrol. Prod. Equip. Co., 92 A.3d 823, 828 (Pa. Super. Ct. 2014). Thus we apply the Indiana statute of limitations with its discovery rule to the claims of breach of express warranty, breach of implied warranty, and unjust

enrichment because Indiana will bar them as untimely before Pennsylvania would do so.

Whether tolling has occurred is, of course, a fact intensive inquiry. The undisputed facts here establish that beginning on at least March 13, 2014, Mr. Juday not only had an "unrebutted suspicion" that he had suffered an injury from the Zostavax vaccine administered to him on March 2, 2014, but also had information that there was a "reasonable possibility" that there was a causal connection between the vaccine and his symptoms.

We start with the medical records of his March 12, 2014 visit to Prairie Lakes Family Medicine, which contain information supplied by the Judays. These records state that he had had a Zostavax vaccination and eight days later developed a rash on his trunk which had spread across his back. At this point, he and his wife considered his recent vaccination to be a sufficiently noteworthy event to call it to the attention of Ms. Compton, the nurse practitioner.

Mr. Juday's own statements to his employer the next day, March 13, 2014, are telling. Significantly, Mr. Juday's disability report to his employer on that date, only eleven days after he received the vaccine injection, stated that the disability keeping him from work resulted from "Severe Allergic Reaction to Shingles," which he explained in his deposition meant

-14-

a reaction to the "shingles vaccination." While he does not recall using the exact words recorded on his disability form, he does remember that he informed his employer, "I had a shingles vaccination and I was sick." In everyday parlance, he obviously was informing his employer that a causal connection existed between these two closely occurring events, that is receipt of the vaccine and his illness. There is no other rational explanation for saying not only that he was sick but also in the same breath that he had received the shingles vaccination. We find nothing in the record which altered his thinking in this regard.[3] Indeed, his medical records at Prairie Lakes Family Medicine for March 24 and April 1, 2014 confirm the court's conclusion.

In a final effort to benefit from the discovery rule, plaintiffs have belatedly asserted that Merck engaged in fraudulent concealment.[4] Under both Pennsylvania and Indiana law, fraudulent concealment by a person liable for a claim is a basis for the tolling of the statute of limitations.

---

3. We accept for present purposes that neither his physician nor Ms. Compton said anything to him about the vaccine being a possible cause of his illness.

4. Plaintiffs did not make this argument in their brief in opposition to defendants' motion for summary judgment. (Doc. # 25). It was not until oral argument that plaintiffs first raised this issue and thereafter inserted it into a supplemental brief which the court requested to discuss the statutes of limitations and the discovery rule under Indiana law. (Doc. # 32).

The Pennsylvania Supreme Court cautioned in Fine that a "defendant may not invoke the statute of limitations, if through fraud or concealment, he causes a plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." 870 A.2d at 860. Fraud includes "unintentional deception." The plaintiff must prove fraudulent concealment "by clear, precise, and convincing evidence." Id.

The Indiana Supreme Court has held that "the doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception on a violation of duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong." Hughes v. Glaese, 659 N.E.2d 516, 519 (Ind. 1995) (quoting Hosp. Corp. of America v. Hiland, 547 N.E.2d 869, 873 (Ind. App. Ct. 1990)). The Court made it clear that "Before the doctrine of estoppel may be used to bar the defendant's use of the statute of limitations, the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action." Id. at 520 (quoting Guy v. Schuldt, 138 N.E.2d 891, 894 (Ind. 1956); see also Ind. Code § 34-11-5-1.

Plaintiffs rely on the testimony of Ms. Juday at her deposition to support their argument that Merck engaged in fraudulent concealment. Plaintiffs assert in their supplemental brief that "Ms. Juday testified that Dr. Van Scyoc's office

reported that Merck had informed them (Dr. Van Scyoc's office) that the development of chickenpox was not a known reaction [to] the Zostavax vaccine." At her deposition, Ms. Juday stated:

> Q. Did you continue your discussions [with Ms. Compton] from March 12, 2014 about what could be the cause of Mr. Juday's symptoms?
>
> A. Yes, we did.
>
> Q. What did you talk about that was – the cough –
>
> A. She [Ms. Compton] told me that she had talked to Merck and they said they'd never seen the chickenpox from the vaccine. So they didn't think that's what it was.
>
> Q. Ms. Compton told you that she had spoken with Merck?
>
> A. Yes, I think she did.
>
> \* \* \*
>
> Q. Did she tell you that she had spoken with somebody at Merck?
>
> A. She told me that Merck had said they didn't have any recorded cases of chickenpox from the vaccine.

Plaintiffs' argument fails. The statements of Ms. Juday incorporate the statements of Ms. Compton which in turn incorporate statements of an unidentified person at Merck. To the extent that plaintiffs cite the statements of Ms. Juday for the truth of the matters asserted those statements are inadmissible hearsay. While a statement to Ms. Compton by a

person authorized to speak for Merck may be an admission, the statement by Ms. Compton to Ms. Juday about what Merck said is inadmissible hearsay since that part of the combined statements does not fit within any exception to the hearsay rule. Fed. R. Evid. 801-05; Fed. R. Civ. P. 56(c)(2); see also Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329 (3d Cir. 1995).

At most, the statements of Ms. Juday referencing Merck can only be admitted for the fact that Ms. Compton said it to her. However, there is no evidence in the record that Ms. Juday ever told her husband about this conversation with Ms. Compton. Ms. Juday was not asked at her deposition if she told her husband about it, and he likewise was not questioned about it at his deposition. Thus there is nothing before the court that he ever relied upon what Merck purportedly told Ms. Compton so as to cause any delay in the filing of the lawsuit.

In sum, there is no evidence that Merck concealed any material fact from or deceived the Judays or violated any duty Merck owed to them. There is no evidence that Merck knew of a case where the vaccine had caused chickenpox or that it misled plaintiffs when it reported that it did not think that the vaccine had caused the chickenpox. There is simply no evidence that any alleged statement by Merck deflected the Judays in any

way.  Thus, no basis exists to establish fraudulent concealment so as to toll the statutes of limitations.

It is clear that by March 13, 2014 Mr. Juday not only had an "unrebutted suspicion" but also had information there was "a reasonable possibility" that the vaccine was the source of his symptoms.  Plaintiffs, who have the burden of proof, have provided no factual basis to invoke the discovery rule under either Pennsylvania or Indiana law to toll the commencement of the limitations periods beyond March 13, 2014.  Unfortunately, plaintiffs did not act with reasonable or ordinary diligence and waited more for than two years, until April 5, 2016, to file their lawsuit.

Accordingly, this action is time-barred.  The motion of defendants for summary judgment will be granted.